# Standard Courtrooms Diagram

## http://www.wbdg.org/
**Example Plans**

The following diagrams are representative of typical courtroom plans.



**Standard Courtroom (U.S. District)**      **Grand Jury Room**

Note: See the U.S. Courts Design Guide and other courts design resources for floor plan configurations typical of for other courtroom types.

## Contact Us

If you have suggestions or want to comment on this website, please contact us at:

**Whole Building Design Guide**
National Institute of Building Sciences (NIBS)
1090 Vermont Avenue NW, Suite 700
Washington, DC 20005
Tel 202-289-7800 . Fax 202-289-1092

Or you can send us an email by completing the form below. Fields marked with an * are required.

to the other parent for the abduction of his own child if by judicial decree the sole custody of the child has been awarded to the other parent.

*d. Necessity of loss of service.* Under the rule stated in this Section, loss of service or impairment of ability to perform service is not a necessary element of a cause of action. The temporary absence of a child who is too young to perform service or the abduction of a hopeless invalid is actionable as well as the abduction of a child who actually renders service to the parent. The deprivation to the parent of the society of the child is itself an injury that the law redresses.

*e. Privilege to rescue from physical violence.* One is not liable for rescuing a child from physical violence inflicted by its parent in excess of his parental privilege. To entitle the actor to immunity, however, it must appear reasonably probable that the child is about to suffer immediate harm or that it will be subjected to immediate harm if it returns to its home. It is also necessary to the actor's protection that he act for the purpose of saving the child from the threatening danger or of assisting him to escape from it. Compare § 686, Comment *e.* A private citizen is not privileged, however, to abduct or entice a child from its parent to save the child from what the actor reasonably believes to constitute improper surroundings or immoral influences, nor to afford it advantages superior to those available in its home. Any person authorized by law to remove a child from an improper home is privileged when acting within the scope of his authority.

*f. Privilege to marry child.* One is not liable for inducing a child to leave its home for the purpose of marrying the actor, even though the marriage is voidable at the suit of either party or the parents.

*g. Damages.* The parent can recover for the loss of society of his child and for his emotional distress resulting from its abduction or enticement. If there has been a loss of service or if the child, though actually not performing service, was old enough to do so, the parent can recover for the loss of the service that he could have required of the child during the period of its absence. He is also entitled to recover for any reasonable expenses incurred by him in regaining custody of the child and for any reasonable expenses incurred or likely to be incurred in treating or caring for the child if it has suffered illness or other bodily harm as a result of the defendant's tortious conduct.

§ 701. Sexual Inte

One other than her consent, has sexua child is subject to lia

(a) the parent v for any resulting l services, and to

(b) the parent v medical treatment likely to be incurr child's minority.

Caveat:

The Institute express out the parent's consen ried adult child who liv conditions as though sh to a parent, is liable fo reasonable expenses inc for the child.

Comment:

*a.* A parent can rec whether the intercourse the child's consent and v statutory age of consen stated in § 703, the chil though it may bar a rec by the parent.

*b.* Only that parent can recover for loss of child has been awarded tain an action for the l this action the parent c incurred for the child's incurred for this purpo who is under a legal du

*c. Necessity of loss* in § 700, there can be course with his minor ability to render them

See Appendix for Reporte

## POINDEXTER v. GREENHOW
### 114 US 270, 290 1885

### POINDEXTER
v.
### GREENHOW, Treasurer, etc.
#### April 20, 1885

In the discussion of such questions, the distinction between the government of a state and the state itself is important, and should be observed. In common speech and common apprehension they are usually regarded as identical; and as ordinarily the acts of the government are the acts of the state, because within the limits of its delegation of power, the government of the state is generally confounded with the state itself, and often the former is meant when the latter is mentioned.

*The state itself is an ideal person, intangible, invisible, immutable.* **The government is an agent,** *and, within the sphere of the agency, a perfect representative; but outside of that, it is a lawless usurpation.* The constitution of the state is the limit of the authority of its government, and both government and state are subject to the supremacy of the constitution of the United States, and of the laws made in pursuance thereof. So that, while it is true in respect to the government of a state, as was said in Langford v. U. S. 101 U.S. 341 , that the maxim, that the king can do no wrong, has no place in our system of government; yet it is also true, in respect to the state itself, that whatever wrong is attempted in its name is imputable to its government, and not to the state, for, as it can speak and act only by law, whatever it does say and do must be lawful. That which, therefore, is unlawful because made so by the supreme law, the constitution of the United States, is not the word or deed of the state, but is the mere wrong and trespass of those individual persons who falsely speak and act in its name. It was upon the ground of this important distinction that this court proceeded in the case of Texas v. White, 7 Wall. 700,

# Exhibit " "

*In Camera*

AFTER seven-plus years, 500 PAGES
into The Court case File

PAGE 10

RESPONSE TO REQUEST FOR ADMISSION..............................528-532

ORDER DATED 11-25-08......................................................533-534

IMMEDIATE REQUEST FOR THE PETITION TO "SHOW
    CAUSE" FOR SHELTER CARE...............................535-538

IMMEDIATE REQUEST FOR A HEARING RELYING ON
    RULE 60(b)(6)..............................................................539-556

CASE ACTION SUMMARY (JU 2001-51832.01)......................557-558

LETTER OF TRANSMITTAL..................................................559

NOTICE OF APPEAL............................................................560-561

DOCKETING STATEMENT....................................................562-563

TRANSCRIPT PURCHASE ORDER AND
    AND REFERENCE INFORMATION.............................564-583

REPORTER'S TRANSCRIP.....................................................

AFTER APPROX 30+ hearings, I was
still making way wish and Demand Known
To ALL, as To, where and/or what
was The moving instrument established
Before The Court To obtain Jurisdiction
in which any officer of the Court
had the right to order performance
Result of This Hearing The "JUDGE"
Denied me, Demand To Bring The



1   for years can we, please, see the very first piece

2   of paper of how this whole thing got started. Can

3   we, please, see what you used to show cause to take

4   this man's child into custody.

5           If I was actually guilty of something --

6   if there's actually police reports, photographs,

7   hospital records, something if I'm doing something

8   wrong. Something saying look at what you did, look

9   at what you did to that woman.    They gave me

10  nothing for all these years.  So, when he says --

11  my attorney -- (inaudible) -- yes, he's a great

12  guy.    I love talking to him.

13          But, like I said, I'm baffled by this

14  because I've asked them, please, tell me how

15  we got here.  Can you -- he's never seen any

16  evidence.  I've never seen any evidence.  It's in

17  that box with the -- there's except, but there's never

18  no charge against anybody.  Why is there so much

19  paperwork unless you're just trying to cram up the

20  court.  I don't want to make you read all that.  I

21  certainly don't want to read all this.  But what

22  is the very first couple of pieces of paper saying

23  how did we get here, how did this stuff start.

24  That was my motion I filed today.

25          THE COURT:  Okay.  I'm sorry.  I haven't

58

```
1    seen that other motion.  Is that something that
2    they just brought up here.  Is this the -- are you
3    referring to the document entitled immediate
4    request for the petition to show cause for shelter
5    care?
6              MR. LENTZ:  Yes, Your Honor.
7              THE COURT:  Okay.  And in that petition
8    you're -- in your immediate request for the
9    petition to show cause for shelter care, you're
10   requesting --
11             MR. CONBOY:  I think he's requesting the
12   original shelter care petition or dependency
13   petition, whatever was filed initiating the
14   proceedings against him.
15             THE COURT:  Okay.  And are you saying
16   that it's not in the court file?
17             MR. LENTZ:  He said he -- Tom said --
18             THE COURT:  I'm asking you.  You're
19   representing yourself.
20             MR. LENTZ:  All my attorneys have said
21   they've never seen it.
22             THE COURT:  Okay.  Have you looked in the
23   court file for it?
24             MR. LENTZ:  Just for five minutes the
25   other day with you.  And --
```

# EXHIBIT - 58

59

1    THE COURT: I'm sorry. Did I cut your
2   time off to see it? I apologize. Didn't I give
3   you all the time you needed the other day?
4       MR. LENTZ: I said, it should be in the
5   first couple of pages. I said, I just need to see
6   the very first case file. I just need to see the
7   first five, ten pages. I said, if I can't find it
8   in the first five or ten pages there's no sense
9   looking through anything else. And you let me look
10  through the five or ten pages of it. I didn't see
11  it.
12      THE COURT: But you didn't -- I want to
13  make sure that the record reflects the fact that
14  you had an opportunity to do it. Would you like
15  another opportunity to look through it?
16      MR. LENTZ: Yes, if we would just that.
17  In the first ten pages it should be in there. If
18  it's not in there, we're good to go.
19      THE COURT: I don't know where it went.
20  I think it's probably outside of the Rule 60(b)
21  motion, but I don't have a problem. As I said
22  since you represent yourself, certainly you can
23  look through the court file.
24      MR. LENTZ: Like I said, we asked the
25  Department of Justice to look for us and they -- my

moving Instrument !

DoJ / FBI

1       MR. LENTZ:  Tom and I was talking about

2  that before.

3       THE COURT:  I don't want that time limit

4  to slip by because it's not nearly as long as it is

5  in some other courts.  In this court it's only

6  fourteen days.



17                      The Rule 60(b)

18  motion that I allowed you to refile, I denied the

19  Rule 60(b) motion for everything except for

20  inadequate assistance of counsel.  Okay.

21       MR. LENTZ:  That's what I'm requesting

22  this verbal motion before the court requesting that

23  if this information isn't in the case file, that

24  there's been no reason why we've been here wasting

25  all our time, I want the children returned to me

MoViNG iNSTRUMENT

**AFTER THE FINAL JUDGMENT The JUDGE SAID I CAN "NOW"**

1    immediately.

2              Mr. McKay ... and that motion

3    denied.  If ... you can look at the court ...

4    So, let's ... that ...

5

6              END OF PROCEEDINGS.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**FOR NEARLY nine years I, nor the mother of the child (my wife) WAS ABLE TO VIEW, nor; Inspect The court case file; cf. Rule 5a**

**we had The FBI go TRY TO get it for us, And The JUDGE said she WOULD NOT!**

**give it to the feds !**

IN THE FAMILY COURT FOR JEFFERSON COUNTY, ALABAMA



IN THE MATTER OF:                                              CASE NO.

## ORDER

This cause coming on October 6, 2008 at 2:00 P.M. and there being present the father, Karl Lentz, pro se, and Thomas Conboy, Esq., standby counsel for Karl Lentz; Mari Morrison, Esq. attorney for the mother, Mary Kaye Mangina Lentz, the said mother not being present; Jonathan Schlenker, Esq., attorney for the Department of Human Resources; and Harry A. Drasutis, Esq., the guardian ad litem for the above children, and after hearing argument of the parties it is ORDERED:

1. The "Motion to Expunge" filed by Karl Lentz October 6, 2008 is DENIED.

2. The "Motion to Strike" filed by Karl Lentz October 6, 2008 is DENIED.

3. The "Motion to Dismiss" filed by Karl Lentz October 6, 2008 is DENIED.

4. All requests for admissions filed in this matter by Karl Lentz on or before October 6, 2008--whether directed to the Department of Human Resources, to a party, or to a non-party individual or entity--are hereby STRUCK and no party or entity shall be obligated to answer; however, Karl Lentz shall be allowed until October 20, 2008 to file 15 or fewer requests for admission in proper form and directed to the Department of Human Resources, who shall respond thereto by November 3, 2008.

5. The Department of Human Resources' motion to quash the subpoena to Sylvia Johnson is GRANTED, by agreement of the parties.

6. The Department of Human Resources' motion to quash the subpoena to Bryan Huff is GRANTED.

7. The Department of Human Resources' motion to quash the subpoena to Allen Summers is GRANTED.

8. The motion to quash deposition of the Department of Human Resources is GRANTED.

9. The motions of Karl Lentz for separate trials or to align the parties filed October 6, 2008 is/are withdrawn by Karl Lentz.



10. The motion of Karl Lentz to modify visitation is DENIED; however, by October 20, 2008 the father shall provide to this court and all parties the name of a licensed psychologist with whom he shall meet for an evaluation as previously ordered by this court, and in addition Karl Lentz shall satisfy all requirements of previous orders in this cause. Once Mr. Lentz has satisfied all such orders, he may petition this court for visitation as provided by law, and assuming this court then has jurisdiction to consider such petition, the same will be set for a hearing.

11. The motion by Karl Lentz for immediate availability of children's records is DENIED. Notwithstanding such denial, based on the representations of Karl Lentz that there exists a Child Abuse/Neglect Report against him and the conflicting representations of the Department of Human Resources that no such Child Abuse/Neglect Report exists against him, the Department of Human Resources SHALL review its records and certify in writing to this court and to Karl Lentz that no Child Abuse/Neglect Report against Karl Lentz exists in the records of Jefferson County Department of Human Resources, or in the alternative furnish him a copy of any such Report they hold.

12. The objection to discovery filed by the Department of Human Resources is GRANTED, and no discovery shall be allowed in this cause except as otherwise provided by this instant order.

13. The objection to Karl Lentz's oral motion for transcripts, filed by the Department of Human Resources is GRANTED, and the oral motion for transcripts is DENIED; however, should Karl Lentz present to this court a motion for Rule 60(b) hearing as set out below, and should specific reference be made therein for information necessitated in proof of his claim and available only from such transcripts, this court will revisit that issue.

14. The motion by the Department of Human Resources for a protective order for the DHR records is held in abeyance and will be ruled on if and when Karl Lentz files a motion in proper form under Rule 60(b) as ordered below. The Department of Human Resources shall keep custody of the copies of said records for this court to review should same be necessary.

15. The two motions under Rule 60(b) heretofore filed in this cause are DENIED. However, as Karl Lentz has alleged ineffective assistance of trial counsel, Karl Lentz shall be allowed until November 5, 2008 to file a motion under Rule 60(b) alleging ineffective assistance of counsel, setting out specific facts which would, if proved, allow for relief under Rule 60(b), and Mr. Lentz is specifically directed to the requirements of Rule 9 of the Alabama Rules of Civil Procedure, should he allege fraud in said motion.

16. Standby counsel for father, Thomas Conboy, Esq., is ORDERED to forward a copy of this order to Karl Lentz, if the address below is not the best address known to Mr. Conboy.

17. Other than specifically excepted above, no further motions or discovery shall be allowed in this cause, and any motion or claim currently pending in this cause and not ruled on either before the date of this order, or pursuant to this order, is hereby DENIED.

Done and ordered, this _____ day of __10/10_____, 200 8 .

<u>WILLIAM D. OWINGS</u>
DISTRICT JUDGE

The office of the above judge forwarded a copy of this order to:

| | | | |
|---|---|---|---|
| Guardian ad Litem: | Harry Drasutis<br>PO Box 383234<br>Birmingham, AL 35238-3234 | | |
| | | Standby counsel for father: | Thomas Conboy, Jr.<br>Conboy Law Firm LLC<br>611 Camden Rdg<br>Birmingham, AL 35226-1993 |
| Attorney for mother: | Mari Morrison<br>P.O. Box 36783<br>Birmingham, AL 35236-6783 | | |
| Father, pro se: | Karl Lentz<br>33 Surry Ln.<br>Fishersville, VA 22939 | Attorney for DHR: | Jonathan Schleuker<br>P.O. Box 13248<br>Birmingham, AL 35202-3248 |

because of the state's sovereignty.[7]

*Recovery of property.*

Statute may enable a state to recover unlawfully converted state property, other than real property.[8]

## § 558   Interest in subject matter

**A state, like any other party, cannot maintain an action where it has no right or interest which has been violated or needs protection.**

### Research References

West's Key Number Digest, States ⊜192

A state, like any other party, cannot maintain an action where it has no right or interest which has been violated or needs protection.[1] In order that a state may maintain a suit founded on some proprietary or corporate right it must ordinarily have such an interest in the subject matter as would permit a private litigant to bring a similar suit.[2]

### 2. Remedies and Rights of Action Against State or State Officers

## § 559   Generally

**In order to recover against the state or its officers, a plaintiff should show a proper interest in the subject matter of the suit, the existence of a substantive cause of action, and consent of the state to be sued.**

### Research References

West's Key Number Digest, States ⊜193

In order to have a right of action against a state or its officers a plaintiff must show not only a proper interest in the subject matter[1] and the existence of a substantive cause of action,[2] but, also, if the suit is in effect one against the state, that the state has granted him or her a remedial right against it.[3] Where a plaintiff is entitled to sue the state, he or she should pursue such remedy, if any, as may be prescribed by the statute granting the state's consent to be sued.[4]

A legislature's power to withhold appropriations to cover a state's obligations, to impose special procedures for processing and the enforcement of claims, and for time limitations upon the enforceability of claims affect only the remedy available for a state's breach of contract and not the validity of the obligation on which the claim is based.[5]

Speculation that a state project will result in injustice does not state a cause of action for mandamus relief under a state statute.[6] Further, a state may not be held liable for damages arising from the passage of unconstitutional legislation.[7]

## § 560   State boards, officers, and agents

**The arm of the court should never be interposed against an executive officer of the state government without evidence of clear disregard of the law or constitutional rights.**

### Research References

---

[7]Okla.—State ex rel. Com'rs of Land Office v. Miller, 1962 OK 275, 380 P.2d 938 (Okla. 1962).

[8]N.Y.—State v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 746 N.Y.S.2d 637, 774 N.E.2d 702 (2002).

[Section 558]

[1]N.C.—State v. Brooks, 275 N.C. 175, 166 S.E.2d 70 (1969).

[2]U.S.—Com. of Pa. ex rel. Creamer v. U.S. Dept. of Agriculture, 469 F.2d 1387 (3d Cir. 1972).

[Section 559]

[1]La.—Louisiana Independent Auto Dealers Ass'n v. State, 295 So. 2d 796 (La. 1974).

No standing of voters to bring suit alleging fraud by Secretary of State's Office in election

U.S.—Plotkin v. Ryan, 239 F.3d 882 (7th Cir. 2001).

Proper parties to maintain suit against state, see

§§ 569 to 573.

[2]U.S.—Janda v. State, 348 F. Supp. 568 (N.D. Ill. 1972).

As to waiver of immunity and consent to sue, see §§ 536 to 542.

[3]N.C.—Atlantic Coast Line R. Co. v. State Highway Commission, 268 N.C. 92, 150 S.E.2d 70 (1966).

[4]Va.—Wiecking v. Allied Medical Supply Corp., 239 Va. 548, 391 S.E.2d 258 (1990).

As to claims against state, see §§ 467 et seq.

[5]W.Va.—State ex rel. Cities of Charleston, Huntington and its Counties of Ohio and Kanawha v. West Virginia Economic Development Authority, 214 W. Va. 277, 588 S.E.2d 655 (2003).

[7]Alaska—Robison v. Francis, 777 P.2d 202 (Alaska 1989).

West's Key Number Digest, States ⬅193

The arm of the court should never be interposed against an executive officer of the state government without evidence of clear disregard of the law or constitutional rights,[1] and a state board or commission which is not a separate entity may not be sued as such.[2] On the other hand, a state board or commission which is a separate entity may be subject to suit.[3] Further, a suit may properly be brought against a state officer or agent individually for his or her unauthorized and illegal acts.[4]

## § 561 Conditions precedent

Actions against the state may be maintained only on performance of all conditions precedent.

### Research References

West's Key Number Digest, States ⬅194 to 197

Where the government grants statutory rights of action against itself, any conditions placed on those rights must be followed precisely.[1] Compliance with such conditions may be a jurisdictional prerequisite to a suit

against the state.[2] Regardless, such conditions are mandatory and must be performed strictly.[3]

In some states, a claim against a state entity under a claims act must be verified to entitle the plaintiff to a particular statute of limitations, and substantial compliance is not sufficient.[4]

## § 562 Conditions precedent—Filing of notice of claim

Under some circumstances, an action may not be maintained against the state in the absence of the filing of a notice of claim.

### Research References

West's Key Number Digest, States ⬅194 to 197

A state may be entitled to notice of an accident or an impending claim or action, either under the requirements of due process[1] or under statutory requirements,[2] and the giving of notice of a claim may be a condition precedent to the maintenance of a cause of action against the state.[3] Further, in some states, the plain language of the statute governing

---

[Section 560]

[1] U.S.—Janda v. State, 348 F. Supp. 568 (N.D. Ill. 1972).

[2] N.J.—Frank Briscoe Co., Inc. v. Rutgers, the State University and College of Medicine and Dentistry of New Jersey, 130 N.J. Super. 493, 327 A.2d 687 (Law Div. 1974).

[3] U.S.—Belle Fontaine Towing Co. v. Department of Highways, State of La., 271 F. Supp. 60 (E.D. La. 1967).

[4] § 555.

[Section 561]

[1] Utah—Hall v. Utah State Dept. of Corrections, 2001 UT 34, 24 P.3d 958 (Utah 2001).

Son not required to establish decedent's paternity before wrongful death claim to state

Md.—Lopez v. Maryland State Highway Admin., 327 Md. 486, 610 A.2d 778 (1992).

[2] N.D.—Dan Nelson Const., Inc. v. Nodland & Dickson, 2000 ND 61, 608 N.W.2d 267 (N.D. 2000).

[3] Wash.—O'Donoghue v. State, 66 Wash. 2d 787, 405 P.2d 258 (1965).

[4] S.C.—Vines v. Self Memorial Hosp., 314 S.C. 305, 443 S.E.2d 909 (1994).

[Section 562]

[1] N.Y.—People ex rel. Cromwell v. Warden, 74 Misc. 2d 642, 345 N.Y.S.2d 381 (Sup 1973).

[2] Idaho—Anderson v. Spalding, 137 Idaho 509, 50 P.3d 1004 (2002).

N.D.—Moen v. State, 2003 ND 17, 656 N.W.2d 671 (N.D. 2003).

S.D.—Purdy v. Fleming, 2002 SD 156, 655 N.W.2d 424 (S.D. 2002).

Claimant complied with requirement of filing notice of claim with state attorney general

Utah—Shafer v. State, 79 P.3d 936 (Utah 2003).

Mailing of notice of claim to state agency insufficient

Utah—Brown v. Utah Transit Authority, 40 P.3d 638 (Utah 2002).

Notice-of-claim statute preempted when federal civil rights action brought in state court

U.S.—Felder v. Casey, 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988).

Allegation of filing notice of claim is jurisdictional

Wyo.—Beaulieu v. Florquist, 2001 WY 33, 20 P.3d 521 (Wyo. 2001).

Notice of claim not required until claim accrues

U.S.—Rowe v. City of Fort Lauderdale, 279 F.3d 1271 (11th Cir. 2002).

Notice requirements applied to juvenile court

N.D.—Knutson v. County of Barnes, 2002 ND 68, 642 N.W.2d 910 (N.D. 2002), cert. denied, 537 U.S. 978, 123 S. Ct. 440, 154 L. Ed. 2d 337 (2002).

[3] Colo.—Gallagher v. Board of Trustees for University

claims against the state requires explicit written notice of the claim, and actual notice is insufficient.[4] Absent the timely filing of a notice of claim against a state, a court may lack subject matter jurisdiction to entertain the lawsuit against the state,[5] or a certain claim may be barred.[6] In states where notice provisions of claims acts are in derogation of the common law, they must be strictly construed against limitations on a claimant's right to bring suit.[7]

The fact that a governmental entity creates a condition causing injury does not eliminate the necessity for a plaintiff's compliance with the notice provisions of a claims act.[8] However, under some statutes the giving of a notice is not a condition precedent to the existence of liability on the part of the state, but is a condition only on a plaintiff's right thereafter to pursue his or her remedy against the state,[9] and only substantial compliance with the statute is necessary.[10] In states where a notice of claim requirement of a state claims act is a nonjurisdictional requirement, the failure to give notice is not grounds for dismissal of an action against the state.[11] Requirements that claims or notices be served or filed may be

waived by the state or other public body.[12]

In some states, a claimant's physical and mental incapacity do not excuse him or her from the requirement that he or she notify the state of the intention to file suit against the state within the statute of limitation.[13] However, the status of minority qualifies a person as "incapacitated" in some states and postpones the deadline for required notice of claim under a claims act.[14]

The failure of a state officer to meet venue requirements for an application for leave to file late notice of a claim against a public corporation may not impair the jurisdiction of the court to consider the application.[15]

## § 563  Conditions precedent—Filing of claim

Under some circumstances, an action may not be maintained against the state in the absence of the filing of a claim.

**Research References**

West's Key Number Digest, States ⬅194 to 197

In the absence of a statutory requirement, the presentation of a claim to some state officer or body is not a prerequisite to the right

of Northern Colorado, 54 P.3d 386, 169 Ed. Law Rep. 711 (Colo. 2002).

  Miss.—Southern v. Mississippi State Hosp., 853 So. 2d 1212 (Miss. 2003).

  **Annotation References:** Complaint as satisfying requirement of notice of claim upon states, municipalities, and other political subdivisions, 45 A.L.R. 5th 109.

  Persons or entities upon whom notice of injury or claim against state or state agencies may or must be served, 45 A.L.R. 5th 173.

  Maintenance of class action against governmental entity as affected by requirement of notice of claim, 76 A.L.R. 3d 1244.

[4]N.D.—Ghorbanni v. North Dakota Council on Arts, 2002 ND 22, 639 N.W.2d 507 (N.D. 2002).

**Strict compliance with notice of claim requirement required**

  Ga.—Georgia Ports Authority v. Harris, 274 Ga. 146, 549 S.E.2d 95 (2001).

  **Annotation References:** Sufficiency of notice of claim against local governmental unit as regards identity, name, address, and residence of claimant, 53 A.L.R. 5th 617.

[5]N.D.—Ghorbanni v. North Dakota Council on Arts, 2002 ND 22, 639 N.W.2d 507 (N.D. 2002).

[6]Utah—Sanders v. Leavitt, 2001 UT 78, 37 P.3d 1052

(Utah 2001).

[7]Ind.—South Bend Community Schools Corp. v. Widawski, 622 N.E.2d 160, 86 Ed. Law Rep. 950 (Ind. 1993).

[8]N.M.—Tafoya v. Doe, 100 N.M. 328, 670 P.2d 582 (Ct. App. 1983).

[9]N.J.—Markey v. Skog, 129 N.J. Super. 192, 322 A.2d 513 (Law Div. 1974).

[10]N.J.—Zamel v. Port of New York Authority, 56 N.J. 1, 264 A.2d 201 (1970).

[11]Minn.—Naylor v. Minnesota Daily, 342 N.W.2d 632 (Minn. 1984).

[12]N.J.—Atlantic Aviation Corp. v. Port of New York Authority, 66 N.J. Super. 15, 168 A.2d 262 (Law Div. 1961).

  **Annotation References:** Waiver of, or Estoppel to Assert, Failure to Give or Defects in Notice of Claim Against State or Local Political Subdivision—Modern Status, 64 A.L.R. 5th 519.

[13]Tex.—Rath v. State, 788 S.W.2d 48 (Tex. App. Corpus Christi 1990), writ denied, (July 3, 1990).

[14]Ind.—South Bend Community Schools Corp. v. Widawski, 622 N.E.2d 160, 86 Ed. Law Rep. 950 (Ind. 1993).

[15]N.Y.—Kroupa v. Facilities Development Corp., 128 Misc. 2d 904, 491 N.Y.S.2d 908 (Sup 1985).

to maintain an action against a state.[1] However, under statute, the filing of a claim with a state officer may be a condition precedent to suit that cannot be waived.[2] Failure to substantially comply with requirements for bringing a claim against a state may require the dismissal of the action.[3] The purpose of claim filing requirements is to give the state and public entities the opportunity to investigate promptly, to the end that it may protect itself against spurious and unjust claims, and to negotiate settlements, to prepare a defense, and to rectify the conditions and practices which give rise to the claim.[4] Where the filing of a claim is required by statute, the plaintiff must exhaust the administrative remedies subsequent to the claim before he or she can maintain his or her action against the state.[5]

Such filing requirements may be excused pursuant to the terms of the statute[6] or by the courts,[7] and late filing may be permitted.[8] However, the mere fact that the state has some knowledge or notice of a possible claim against it will not excuse the failure of a claimant to file a claim as required by statute.[9]

## D. PRACTICE AND PROCEDURE

**Research References**

*Annotation References*

A.L.R. Digest: States §§ 16, 17
A.L.R. Index: Governmental Immunity or Privilege; States

### 1. In General

## § 564 Generally

**On entering the courts as a litigant, the state is bound by the general rules of practice and procedure established for the proper functioning of the courts in the discharge of their duties.**

**Research References**

West's Key Number Digest, States ⬥190, 191

On entering the courts as a litigant, the state is bound by the general rules of practice and procedure established for the proper functioning of the courts in the discharge of their duties.[1] When the state invokes the aid of the courts, it must submit to the application of the same principles which govern private suitors.[2]

A state ordinarily has no greater rights by virtue of its being sovereign than an individual would have,[3] except where special provision is made to the contrary.[4] Accordingly, the laws and rules governing evidence, burden of proof, cross complaints, pleadings, instructed verdicts, and summary judgments bind the state and other litigants uniformly.[5]

On the other hand, it has also been stated that the state does not litigate as an individual,[6] and that a suit by the state is governed by different statutes and decisions than those governing actions between individuals.[7]

## § 565 Jurisdiction and venue

[Section 563]

[1]Ariz.—State v. Williams, 12 Ariz. App. 498, 472 P.2d 109 (Div. 1 1970).

As to claims against state, generally, see §§ 467 et seq.

[2]Wyo.—Campbell County School Dist. v. Catchpole, 6 P.3d 1275, 146 Ed. Law Rep. 912 (Wyo. 2000).

[3]Miss.—Little v. Mississippi Dept. of Human Services, 835 So. 2d 9 (Miss. 2002).

[4]Ariz.—State v. Brooks, 23 Ariz. App. 463, 534 P.2d 271 (Div. 1 1975).

[5]Va.—Whitley v. Com., 260 Va. 482, 538 S.E.2d 296 (2000).

As to claims remedies under auditing boards and courts of claims, see §§ 474 et seq.

[6]Wash.—Cook v. State, 83 Wash. 2d 599, 521 P.2d 725 (1974).

[7]Cal.—Savage v. State of California, 4 Cal. App. 3d 793, 84 Cal. Rptr. 650 (3d Dist. 1970).

[8]N.J.—Ventola v. New Jersey Veteran's Memorial Home, 164 N.J. 74, 751 A.2d 559 (2000).

[9]Cal.—Petersen v. City of Vallejo, 259 Cal. App. 2d 757, 66 Cal. Rptr. 776 (1st Dist. 1968).

[Section 564]

[1]Ill.—Department of Transp., For and In Behalf of People v. Zabel, 29 Ill. App. 3d 407, 330 N.E.2d 878 (3d Dist. 1975).

[2]Tex.—Texas Dept. of Corrections v. Herring, 513 S.W.2d 6 (Tex. 1974).

[3]Pa.—Com. Through Bradley v. Gerlach, 399 Pa. 74, 159 A.2d 915 (1960).

[4]Tex.—Texas Dept. of Corrections v. Herring, 513 S.W.2d 6 (Tex. 1974).

[5]Tex.—Texas Dept. of Corrections v. Herring, 513 S.W.2d 6 (Tex. 1974).

[6]Tenn.—Illinois Cent. R. Co. v. Garner, 193 Tenn. 91, 241 S.W.2d 926 (1951).

[7]Tex.—International Paper Co. v. State, 380 S.W.2d 18 (Tex. Civ. App. Texarkana 1964), writ refused n.r.e. (Oct. 7, 1964).

**Where the pleadings show that the action is one against the state, and sovereign immunity is not waived, the trial court acquires no jurisdiction.**

### Research References

West's Key Number Digest, States ⊂⇒200

Where the pleadings show that the action is one against the state and sovereign immunity is not waived, the trial court acquires no jurisdiction.[1] A statute vesting circuit courts with jurisdiction to hear and determine all questions, actions, and controversies affecting state boards, commissions, and agencies is a venue statute governing instances where the state is subject to suit, rather than a general waiver of sovereign immunity.[2]

Such jurisdiction as a state possesses must be traced to the constitution or to legislative enactment declaring the state's public policy in this and other respects.[3] A suit can be maintained against a state only in the courts and places in which it has consented to be sued,[4] but where suit is not so brought, it cannot be entertained by the court.[5]

General statutes authorizing changes of venue are generally inapplicable to state actions.[6] However, transfer of venue may be proper if provided for by applicable statutes.[7] An action brought under a state claims act but commenced in an improper venue can be transferred in accordance with statutory provisions applicable to a change of venue or transfer of action.[8]

An exclusive venue statute governing proceedings that are not prohibited by the constitutional immunity of the state from suit is not applicable to a cause of action wherein recovery is sought against the liability insurance coverage of a state agency, where the insurance carrier is the real party in interest.[9]

## § 566   Jurisdiction and venue— Home venue privilege

**The "home venue privilege" provides that venue in a suit against the state is proper only in the county in which the state maintains its principal headquarters.**

### Research References

West's Key Number Digest, States ⊂⇒200

The "home venue privilege" provides that venue in a suit against the state, or an agency or subdivision of the state, is proper only in the county in which the state, or the agency or subdivision of the state, maintains its principal headquarters.[1] The privilege applies if the primary purpose of the litigation is to obtain a judicial interpretation or declaration of a party's rights or duties under rules and regulations promulgated by the state agency where no unlawful invasion of a lawful right secured by the constitution or laws of the jurisdiction is directly threatened in the county where suit is instituted.[2]

Under the "sword-wielder exception," the home venue privilege does not apply if the primary purpose of the litigation is to obtain direct judicial protection from an alleged unlawful invasion of the constitutional rights of the plaintiff within the county where the suit is instituted as a result of the enforcement or threatened enforcement by a state agency of rules and regulations alleged to be

[Section 565]

[1]Ark.—Arkansas Public Defender Com'n v. Greene County Circuit Court, 343 Ark. 49, 32 S.W.3d 470 (2000).

[2]S.C.—Unisys Corp. v. South Carolina Budget and Control Bd. Div. of General Services Information Technology Management Office, 346 S.C. 158, 551 S.E.2d 263 (2001).

[3]R.I.—Markham v. State, 99 R.I. 650, 210 A.2d 146 (1965).

[4]As to waiver of immunity and consent to be sued, see §§ 536 to 542.

[5]Pa.—Koynok v. Com. Office for Aid to Nonpublic Ed., Dept. of Ed., 11 Pa. Commw. 556, 314 A.2d 355 (1974).

[6]Wash.—Architectural Woods, Inc. v. State, 7 Wash. App. 855, 503 P.2d 1138 (Div. 2 1972).

[7]Neb.—Blitzkie v. State, 228 Neb. 409, 422 N.W.2d 773 (1988).

[8]Neb.—Blitzkie v. State, 228 Neb. 409, 422 N.W.2d 773 (1988).

[9]W.Va.—King v. Heffernan, 591 S.E.2d 761 (W. Va. 2003).

[Section 566]

[1]Fla.—Florida Dept. of Children and Families v. Sun-Sentinel, Inc., 865 So. 2d 1278 (Fla. 2004).

**Venue in county in which seat of state government located**

Mass.—Moore v. Bell Chevrolet-Pontiac-Buick-GMC, LLC, 864 So. 2d 939 (Miss. 2004).

[2]Fla.—Florida Dept. of Children and Families v. Sun-Sentinel, Inc., 865 So. 2d 1278 (Fla. 2004).

unconstitutional as to the plaintiff, and if the validity or invalidity of the rules and regulations sought to be enforced comes into question only secondarily and as incidental to the main issue involved.[3] Another exception to the home venue privilege is statutory waiver by the legislature.[4] Further, cases in which the governmental defendant is sued as a joint tortfeasor are an exception to the home venue privilege.[5] A trial court must apply the home venue privilege unless one of the exceptions to the privilege is satisfied.[6]

The failure of a state to object or question whether a particular county is the proper venue for an action against the state waives any objection to venue.[7]

### § 567  Jurisdiction and venue— Actions against state officers or agencies

**An action against a public official or agency in his, her or its official status, so that the claim is in effect one against the state, may and should be brought only in the place and court designated for actions against the state.**

### Research References
West's Key Number Digest, States ⟨⟩200

An action against a public official or agency in his, her or its official status, so that the claim is in effect one against the state, may and should be brought only in the place and court designated for actions against the state.[1]

However, personal suits against officers or agencies which are not in effect suits against the state itself are governed by the general rules relating to jurisdiction and venue.[2]

Generally, venue in actions against state departments lies in the county in which their offices are located and their principal duties are performed.[3] Also, a statute requiring all non-contract actions by or against a Department of Transportation (DOT) to be brought in the county where the action arose constitutes an implied designation of that county as the residence of the DOT for purposes of determining venue in that cause of action.[4] Further, the secretary of state must generally be sued at his or her official domicile.[5] However, this requirement is subject to waiver, thereby allowing the action to be brought in a court having jurisdiction located in another county.[6] Further, statutory provisions may authorize venue in a county other than that of an official residence or location of office.[7]

### § 568  Time to sue, limitations, and laches

**The state may be barred from suit by limitations expressly made applicable to the state.**

### Research References
West's Key Number Digest, States ⟨⟩201

The state may be barred from suit by limitations expressly made applicable to the state, but such statutes will not bar claims beyond

---

[3]Fla.—Florida Dept. of Children and Families v. Sun-Sentinel, Inc., 865 So. 2d 1278 (Fla. 2004).

[4]Fla.—Florida Dept. of Children and Families v. Sun-Sentinel, Inc., 865 So. 2d 1278 (Fla. 2004).

[5]Fla.—Florida Dept. of Children and Families v. Sun-Sentinel, Inc., 865 So. 2d 1278 (Fla. 2004).

[6]Fla.—Florida Dept. of Children and Families v. Sun-Sentinel, Inc., 865 So. 2d 1278 (Fla. 2004).

[7]Neb.—Blitzkie v. State, 228 Neb. 409, 422 N.W.2d 773 (1988).

**[Section 567]**

[1]Tenn.  Smith v. Smith, 518 S.W.2d 510 (Tenn. 1975).

[2]N.H.—Rau v. New Hampshire Division of Welfare, 115 N.H. 156, 335 A.2d 657 (1975).

**Application of general procedural rules**

Okla.—State ex rel. State Ins. Fund v. JOA, Inc., 2003 OK 82, 78 P.3d 534 (Okla. 2003), as corrected, (Oct. 3, 2003).

As to sovereign immunity, see §§ 533 to 556.

[3]Mo.—State ex rel. Missouri Dept. of Conservation, Judges of Circuit Court of Reynolds County, 91 S.W.3d 602 (Mo. 2002).

**Action appropriately filed pursuant to general venue statute in county where wrong occurred**

Mo.—State ex rel. Govero v. Kehm, 850 S.W.2d 100 (Mo. 1993).

[4]Ga.—C.W. Matthews Contracting Co., Inc. v. Barnett, 219 Ga. App. 763, 466 S.E.2d 657 (1996).

[5]La.—St. Tammany Parish Council v. Brown, 443 So. 2d 1 (La. Ct. App. 1st Cir. 1983).

[6]Fla.—Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. State, 295 So. 2d 314 (Fla. Dist. Ct. App. 1st Dist. 1974).

[7]Ga.—State Highway Dept. v. Barnett, 124 Ga. App. 703, 185 S.E.2d 624 (1971).

**[Section 568]**

[1]Iowa—Trobaugh v. Sondag, 668 N.W.2d 577 (Iowa

statute.[3] The consent of the state to be sued by a taxpayer may arise, however, by necessary implication from the terms of a statute.[4]

A state is not immune under the doctrine of sovereign immunity from a suit by local taxing authorities to require the distribution of taxes collected under a realty tax statute, since in the latter case, such suits do not seek to subject the state to a judgment for money damages, but rather seek to enforce a constitutional mandate.[5]

## § 546   Declaratory judgment actions

A state is not entitled to sovereign immunity when the relief sought is a declaration that a particular statute or action of the state is unconstitutional.

### Research References

West's Key Number Digest, States ⟲191.9(2)

Certain declaratory judgment actions against state officials do not implicate the sovereign immunity doctrine.[1] A state is not entitled to sovereign immunity when the relief sought is a declaration that a particular statute or action of the state is unconstitutional.[2] Further, when a statute or regulation is invalid, sovereign immunity does not preclude a declaratory judgment action or suit for an injunction against the governmental official who is responsible for enforcing the statute or regulation.[3] Thus, private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority.[4] However, declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against a state that cannot be maintained without legislative permission.[5] Private parties cannot circumvent a state's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim.[6]

A state is not a person for purposes of a declaratory judgment action.[7]

## § 547   Eminent domain proceedings

The doctrine of sovereignty immunity does not apply to eminent domain proceedings.

### Research References

West's Key Number Digest, States ⟲191.9(3)

The doctrine of sovereignty immunity does not generally apply to eminent domain proceedings.[1] However, where the claim for compensation is one sounding ex maleficio and is not based on an appropriation for beneficial use, it is subject to the defense of sovereign immunity unless the claim, if any, is pursued under a statute having to do with waiver of immunity.[2]

The filing of a counterclaim in a state's condemnation action for damages for alleged trespass by the state and the separation of the counterclaim from the condemnation action are not objectionable as amounting to the bringing of a suit against the state without its

---

[3]Ga.—Henderson v. Carter, 229 Ga. 876, 195 S.E.2d 4 (1972) (overruled on other grounds by, City of Atlanta v. Barnes, 276 Ga. 449, 578 S.E.2d 110 (2003)).

[4]Mass.—Bates v. Director of Office of Campaign and Political Finance, 436 Mass. 144, 763 N.E.2d 6 (2002).

[5]Pa.—Springdale and Wilkins Townships v. Kane, 11 Pa. Commw. 254, 312 A.2d 611 (1973), decree aff'd by, 463 Pa. 554, 345 A.2d 658 (1975).

[Section 546]

[1]Tex.—Texas Natural Resource Conservation Com'n v. IT-Davy, 74 S.W.3d 849 (Tex. 2002).

[2]Miss.—City of Belmont v. Mississippi State Tax Com'n, 860 So. 2d 289 (Miss. 2003).

Neb.—Northwall v. State, Dept. of Revenue, 263 Neb. 1, 637 N.W.2d 890 (2002).

[3]Md.—Jackson v. Millstone, 369 Md. 575, 801 A.2d 1034 (2002).

[4]Neb.—Northwall v. State, Dept. of Revenue, 263 Neb. 1, 637 N.W.2d 890 (2002).

Tex.—Texas Natural Resource Conservation Com'n v. IT-Davy, 74 S.W.3d 849 (Tex. 2002).

[5]Tex.—Texas Natural Resource Conservation Com'n v. IT-Davy, 74 S.W.3d 849 (Tex. 2002).

As to contract actions, see § 544.

[6]Tex.—Texas Natural Resource Conservation Com'n v. IT-Davy, 74 S.W.3d 849 (Tex. 2002).

[7]S.D.—Pennington County v. State ex rel. Unified Judicial System, 2002 SD 31, 641 N.W.2d 127 (S.D. 2002).

[Section 547]

[1]W.Va.—Shaffer v. West Virginia Dept. of Transp., Div. of Highways, 208 W. Va. 673, 542 S.E.2d 836 (2000).

[2]Utah—State By and Through Road Commission v. Tanner, 30 Utah 2d 19, 512 P.2d 1022 (1973).

state is determined by the essential nature and effect of the proceeding.[2]

A trial or appellate court should, at any stage of the proceedings, dismiss a suit when it becomes convinced that the suit is against the state.[3] To determine whether an action is one against the state, resort must be had to the pleadings.[4]

## § 550  Suits affecting property in which state has or claims interest

When property of the state is involved, the state becomes directly and adversely affected by the suit and the action must be held to be one against the state.

### Research References

West's Key Number Digest, States ⚖️191.10

When property of the state is involved, the state becomes directly and adversely affected by the suit and the action must be held to be one against the state.[1] A suit against a state, involving property in which the state has an undoubted interest,[2] and in which no effective decree or judgment can be rendered without binding the state itself, is a suit against the state and cannot be maintained without its consent.[3] Thus, where an action is, in effect, one to quiet title in realty, adverse to the interests of the state, where there is no issue as to lawfulness of a state's actions in obtain-

ing title, the action is against the state.[4] The mere fact, however, that the state has or claims some interest in the property which is the subject of a suit does not necessarily make the suit one against the state.[5]

### b.  Suits Against State Officers and Agencies

## § 551  Generally

Sovereign immunity applies not only to a state, but to its officers and agencies.

### Research References

West's Key Number Digest, States ⚖️191.10

Sovereign immunity applies to both a state and its agencies.[1] The general rule that a state cannot be sued without its consent cannot be evaded by making an action nominally one against the servants or agents of a state when the real claim is against the state itself.[2] Claims against state officers in their official capacity are "functionally equivalent" to claims against the entity they represent[3] in that a suit against a state official in his or her official capacity is not a suit against that person but rather is a suit against that official's office or the state.[4] In such case, a state official is immune from suit if the action against him or her is in reality an action against the state he or she serves.[5]

It is well settled, as a general proposition, that, even where the state is not named as a

---

C.J.S., Federal Courts §§ 131 to 134.

[2]U.S.—Jackson v. State of Colo., 294 F. Supp. 1065 (D. Colo. 1968).

[3]Ala.—Aland v. Graham, 287 Ala. 226, 250 So. 2d 677 (1971).

[4]Ark.—University of Arkansas for Medical Sciences v. Adams, 117 S.W.3d 588 (Ark. 2003).

[Section 550]
[1]Ill.—People v. Philip Morris, Inc., 198 Ill. 2d 87, 259 Ill. Dec. 845, 759 N.E.2d 906 (2001).

[2]Or.—Coos County v. State, 303 Or. 173, 734 P.2d 1348 (1987).

Annotation References: Maintainability of partition action where United States or state owns an undivided interest in property, 59 A.L.R. 2d 937.

[3]Ala.—Unzicker v. State, 346 So. 2d 931 (Ala. 1977).

[4]Ill.—City of Springfield v. Allphin, 74 Ill. 2d 117, 23 Ill. Dec. 516, 384 N.E.2d 310 (1978).

[5]Mich.—Eager v. Mackie, 376 Mich. 148, 136 N.W.2d

16 (1965).

[Section 551]
[1]Tex.—Texas Dept. of Transp. v. Able, 35 S.W.3d 608 (Tex. 2000).

[2]Colo.—Middleton v. Hartman, 45 P.3d 721, 164 Ed. Law Rep. 906 (Colo. 2002), as modified on denial of reh'g, (May 13, 2002).

[3]Ala.—Haley v. Barbour County, 2004 WL 179313 (Ala. 2004).

Kan.—Purvis v. Williams, 276 Kan. 182, 73 P.3d 740 (2003).

[4]U.S.—Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Ala.—Ex parte Mobile County Dept. of Human Resources, 815 So. 2d 527 (Ala. 2001), cert. denied, 535 U.S. 988, 122 S. Ct. 1542, 152 L. Ed. 2d 468 (2002).

Ga.—Gwinnett County v. Blaney, 275 Ga. 696, 572 S.E.2d 553 (2002).

[5]Ala.—Haley v. Barbour County, 2004 WL 179313 (Ala. 2004).

defendant, if a judgment for the plaintiff will operate to control the action of the state or subject it to liability, the courts treat the suit as one against the state.[6] Further, when the state will be directly and adversely affected by a judgment or decree, the suit is against the state for sovereign immunity purposes.[7] However, indirect effects on a state of a suit against state employees in their individual capacities are not enough to trigger sovereign immunity.[8]

Sovereign immunity does not extend to suits prosecuted against governmental entities which are not an arm of the state.[9]

## § 552  Factors for determining whether suit against agency or officer is suit against state

**There is no definitive test for determining whether a particular entity is an arm of the state such that a suit against it will be barred by sovereign immunity.**

### Research References
West's Key Number Digest, States ⌐191.10

There is no definitive test for determining whether a particular entity is an arm of the state such that a suit against it will be barred by sovereign immunity.[1] In determining whether an action against a state officer is barred on the ground of sovereign immunity, the court considers not the character of the office of the person against whom the suit is brought,[2] but the nature of the action and the relief sought.[3] Specifically, a court looks at whether a result favorable to the plaintiff would directly affect a contract or property right of the state, and whether the defendant is simply a "conduit" through which the plaintiff seeks recovery of damages from the state.[4] Also, as a general rule for determining which suits against state officials are treated as suits against the state for sovereign immunity purposes, a suit is against the sovereign if the judgment sought would interfere with the public administration.[5] For purposes of determining whether an entity may invoke sovereign immunity, neither corporate status nor the power to sue and be sued as an independent entity wholly precludes an entity from being considered an arm of the state.[6]

Factors which a court considers in determining whether an entity is a state agency entitled to constitutional immunity include whether the entity functions statewide, whether the entity performs the work of the state, whether the entity was created by the legislature, and whether the entity is subject to local control.[7] A court will also examine the character of the power delegated to the entity, and the nature of the function performed by the entity.[8]

In determining whether an agent is a state officer entitled to constitutional immunity, an agent's conduct will be attributed to the state for purposes of sovereign immunity if there are no allegations that the agent or employee

---

[6]Ark.—University of Arkansas for Medical Sciences v. Adams, 117 S.W.3d 588 (Ark. 2003).

Colo.—Middleton v. Hartman, 45 P.3d 721, 164 Ed. Law Rep. 906 (Colo. 2002), as modified on denial of reh'g, (May 13, 2002).

Ill.—Board of Library Trustees of Village of Westmont for Use and Benefit of Ozinga Bros., Inc. v. Cinco Const., Inc., 276 Ill. App. 3d 417, 213 Ill. Dec. 3, 658 N.E.2d 473 (1st Dist. 1995), as modified, (Dec. 8, 1995).

As to factors for determining suit against state, see § 552.

[7]Ill.—Herget Nat. Bank of Pekin v. Kenney, 105 Ill. 2d 405, 86 Ill. Dec. 484, 475 N.E.2d 863 (1985).

[8]Colo.—Middleton v. Hartman, 45 P.3d 721, 164 Ed. Law Rep. 906 (Colo. 2002), as modified on denial of reh'g, (May 13, 2002).

[9]W.Va.—Haney v. County Com'n, Preston County, 212 W. Va. 824, 575 S.E.2d 434 (2002).

**[Section 552]**

[1]Vt.—Jacobs v. State Teachers' Retirement System of Vermont, 174 Vt. 404, 816 A.2d 617, 174 Ed. Law Rep. 377 (2002).

[2]Ala.—Patterson v. Gladwin Corp., 835 So. 2d 137 (Ala. 2002), cert. denied, 537 U.S. 974, 123 S. Ct. 436, 154 L. Ed. 2d 331 (2002).

[3]Ala.—Haley v. Barbour County, 2004 WL 179313 (Ala. 2004).

[4]Ala.—Haley v. Barbour County, 2004 WL 179313 (Ala. 2004).

[5]Colo.—Middleton v. Hartman, 45 P.3d 721, 164 Ed. Law Rep. 906 (Colo. 2002), as modified on denial of reh'g, (May 13, 2002).

[6]Alaska—Guerrero v. Alaska Housing Finance Corp., 6 P.3d 250 (Alaska 2000).

[7]W.Va.—Pittsburgh Elevator Co. v. West Virginia Bd. of Regents, 172 W. Va. 743, 310 S.E.2d 675 (1983).

[8]Ala.—Rodgers v. Hopper, 768 So. 2d 963 (Ala. 2000).

of the state acted beyond the scope of his or her authority through wrongful acts; the duty alleged to have been breached was not owed to the public generally, independent of the fact of state employment; and the complained of actions involve matters ordinarily within that employee's normal and official functions of the state.[9]

*Financial status.*

A state cannot be sued indirectly by suing an officer in his or her official capacity when a judgment against the officer would directly affect the financial status of the state treasury.[10] However, sovereign immunity is concerned with claims that by their nature must be paid from public funds, not actions directed against individuals that may be satisfied with state monies solely because the state has chosen to provide indemnification.[11] Further, suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the state's liability insurance coverage, fall outside the traditional constitutional bar to suits against the state.[12]

## § 553   Particular officers and agencies

**Suits against particular officers or agen-**

cies which are, in effect, suits against the state include suits against various individuals and institutions.

**Research References**

West's Key Number Digest, States ⚷191.10

Under the general principles as to what is, in effect, a suit against the state which cannot be maintained without its consent,[1] suits against particular officers or agencies which are, in effect, suits against the state include suits against boards of education, counties,[2] colleges, universities, boards of regents,[3] a special taxing district hospital,[4] and a university hospital.[5] In other cases, suits may be considered to be against the state although brought against a department of health[6] or a department of public safety.[7]

Other suits against particular officers or agencies which are in effect against the state include suits against a prison system, corrections department, prison board, penitentiary,[8] or state athletic commission.[9]

In a legal malpractice action by a former client, a public defender is not a public employee for purposes of a state tort claims act.[10]

## § 554   Suit to compel performance of legal duties

**Generally, where the purpose of a suit is**

[9]U.S.—Richman v. Sheahan, 270 F.3d 430 (7th Cir. 2001), cert. denied, 535 U.S. 971, 122 S. Ct. 1439, 152 L. Ed. 2d 383 (2002).

As to unauthorized and illegal acts of state officers and agencies, see § 555.

[10]Ala.—Lyons v. River Road Const., Inc., 858 So. 2d 257 (Ala. 2003).

Ark.—Short v. Westark Community College, 347 Ark. 497, 65 S.W.3d 440, 161 Ed. Law Rep. 1049 (2002).

Colo.—Middleton v. Hartman, 45 P.3d 721, 164 Ed. Law Rep. 906 (Colo. 2002), as modified on denial of reh'g, (May 13, 2002).

[11]Colo.—Middleton v. Hartman, 45 P.3d 721, 164 Ed. Law Rep. 906 (Colo. 2002), as modified on denial of reh'g, (May 13, 2002).

[12]W.Va.—Pittsburgh Elevator Co. v. West Virginia Bd. of Regents, 172 W. Va. 743, 310 S.E.2d 675 (1983).

[Section 553]

[1]§ 549.

[2]Ky.—Department of Corrections v. Furr, 23 S.W.3d 615 (Ky. 2000).

[3]U.S.—Bowers v. National Collegiate Athletic Ass'n, Act, Inc., 171 F. Supp. 2d 389, 159 Ed. Law Rep. 42 (D.

N.J. 2001), motion to certify appeal granted, 188 F. Supp. 2d 473, 163 Ed. Law Rep. 122 (D.N.J. 2002), order rev'd on other grounds in part, 346 F.3d 402, 181 Ed. Law Rep. 377, 56 Fed. R. Serv. 3d 1048 (3d Cir. 2003).

Ark.—Arkansas Tech University v. Link, 341 Ark. 495, 17 S.W.3d 809, 144 Ed. Law Rep. 1070 (2000).

Ky.—Department of Corrections v. Furr, 23 S.W.3d 615 (Ky. 2000).

[4]Fla.—Eldred v. North Broward Hosp. Dist., 498 So. 2d 911 (Fla. 1986).

[5]Ky.—Department of Corrections v. Furr, 23 S.W.3d 615 (Ky. 2000).

[6]Fla.—Loucks v. Adair, 312 So. 2d 531 (Fla. Dist. Ct. App. 1st Dist. 1975).

[7]U.S.—Flores v. Norton & Ramsey Lines, Inc., 352 F. Supp. 150 (W.D. Tex. 1972).

[8]Mont.—Kish v. Montana State Prison, 161 Mont. 297, 505 P.2d 891 (1973).

[9]Pa.—Hart v. Spectrum Arena, Inc., 15 Pa. Commw. 584, 329 A.2d 311 (1974).

[10]**Notice provisions inapplicable**

Ind.—White v. Galvin, 524 N.E.2d 802 (Ind. Ct. App. 1st Dist. 1988).

to require officers and agents of the state to perform their duties, no immunity from suit is recognized.

### Research References

West's Key Number Digest, States ⟨key⟩191.10

In some states, suits which seek to compel an affirmative action on the part of state officials are barred by sovereign immunity.[1] Generally, however, where the purpose of a suit is to require officers and agents of the state to perform their duties, no immunity from suit is recognized.[2] More specifically, a suit against a state officer or agency to compel the performance of official duties of a purely ministerial nature, involving the exercise of no discretion or political or governmental power, is not a suit against the state and may be maintained without its consent.[3] In some states, actions brought to compel state officials to perform ministerial acts constitute an exception to sovereign immunity, allowing the state to be sued.[4] If, however, the duties in question involve the exercise of official discretion or of political or governmental power, so that to compel the officer is to compel the state, the suit is in effect one against the state and cannot be maintained without its consent.[5]

### § 555 Unauthorized and illegal acts of state officers and agencies

Courts may entertain actions against state officers and state agencies who are allegedly acting beyond their constitutional, statutory or jurisdictional powers.

### Research References

West's Key Number Digest, States ⟨key⟩191.10

Courts may entertain actions against state officers and state agencies who are allegedly acting beyond their constitutional, statutory or jurisdictional powers.[1] Thus, if a suit seeks to restrain a state official from performing affirmative acts, it is not within the rule of immunity.[2] Further, an action against a public officer to obtain relief from an invalid or unlawful act or from an abuse of authority by the officer or agent is not a suit against the state and is not prohibited by sovereign immunity.[3] Such a suit is not a suit against the state requiring statutory authorization because the conduct of the agent or official is unauthorized and thus "ultra vires."[4] However, even though suits against officials acting unlawfully may be brought, plaintiffs may not seek to control the official acting within the scope of his or her legal authority.[5]

Although a defendant may assert that he or she acted officially and on behalf of the state, a suit of this latter class is not a suit against the state,[6] whether it is brought to recover property wrongfully taken or held by the defendant on behalf of the state,[7] to recover dam-

---

[Section 554]

Neb.—Martin v. Nebraska Dept. of Correctional Services, 267 Neb. 33, 671 N.W.2d 613 (2003), cert. denied, 124 S. Ct. 1451 (U.S. 2004).

Ala.—Ex parte Alabama State Bd. of Educ., 810 So. 2d 63, Ed. Law Rep. 1027 (Ala. 2001).

Ala.—Ex parte Alabama State Bd. of Educ., 810 So. 2d 63, Ed. Law Rep. 1027 (Ala. 2001).

Ala.—Gore v. Alabama Dept. of Public Safety, 2003 WL 435 (Ala. 2003).

Ark.—Travelers Cas. & Sur. Co. of America v. State Highway Com'n, 353 Ark. 721, 120 S.W.3d (2003).

Utah—Springville Banking Co. v. Burton, 10 Utah 2d 100, P.2d 157 (1960).

[Section 555]

Feldman v. Ho, 171 F.3d 494, 133 Ed. Law Rep. (7th Cir. 1999).

Conn.—Miller v. Egan, 265 Conn. 301, 828 A.2d 549

[2]Neb.—State ex rel. Steinke v. Lautenbaugh, 263 Neb. 652, 642 N.W.2d 132 (2002).

Pa.—Legal Capitel, LLC. v. Medical Professional Liability Catastrophe Loss Fund, 561 Pa. 336, 750 A.2d 299 (2000).

[3]U.S.—Webb v. City of Dallas, Tex., 314 F.3d 787 (5th Cir. 2002).

Neb.—Martin v. Nebraska Dept. of Correctional Services, 267 Neb. 33, 671 N.W.2d 613 (2003), cert. denied, 124 S. Ct. 1451 (U.S. 2004).

Tex.—Texas A & M University System v. University Book Store, Inc., 683 S.W.2d 140, 22 Ed. Law Rep. 1035 (Tex. App. Waco 1984), writ refused n.r.e., (June 26, 1985).

[4]U.S.—Webb v. City of Dallas, Tex., 314 F.3d 787 (5th Cir. 2002).

[5]Tex.—King v. Texas Dept. of Human Services ex rel. Bost, 28 S.W.3d 27 (Tex. App. Austin 2000).

[6]Me.—Jones v. Maine State Highway Commission, 238 A.2d 226 (Me. 1968).

[7]Conn.—Simmons v. Parizek, 158 Conn. 304, 259 A.2d

.ges,[8] or for an injunction.[9]

## § 556   Suits against agencies acting in nongovernmental capacity

**Suits against state agencies with respect to matters in which they have assumed to act in a private or nongovernmental capacity are not suits against the state.**

### Research References

West's Key Number Digest, States ⬱191.10

Suits against state agencies with relation to matters in which they have assumed to act in a private or nongovernmental capacity,[1] and various suits against certain corporations created by the state to engage in matters partaking more of the nature of ordinary business rather than functions of a governmental or political character[2] are not regarded as suits against the state. Such rule is applicable where the agency is endowed with such separate and distinct existence that its activities are not those of the state.[3] Further, the state's immunity from suit does not extend to an independent contractor doing work for the state.[4]

*Business enterprises beyond borders.*

A state may not claim sovereign immunity for its business enterprises conducted beyond its borders.[5]

## C.   REMEDIES AND RIGHTS OF ACTION BY AND AGAINST STATE

### Research References

*Annotation References*

A.L.R. Digest: States §§ 16, 17
A.L.R. Index: Governmental Immunity or Privilege; States

### 1.   Remedies and Rights of Action By State

## § 557   Generally

**In order to enforce its rights and redress its wrongs as a political corporation, the state may avail itself of any remedy or form of action open to private suitors under similar circumstances.**

### Research References

West's Key Number Digest, States ⬱192

In order to enforce its rights or redress its wrongs, as a political corporation, a state may ordinarily avail itself of any remedy or form of action which would be open to a private suitor under similar circumstances.[1] When a state suffers harm, it has standing to bring suit,[2] though a state cannot merely litigate as a volunteer the personal claims of its competent citizens.[3] The state, like all litigants, is entitled to make a decision to only litigate civilly where such litigation, if successful, would be profitable.[4] When the state has brought suit, it is generally subject to, and its right to relief is usually determined in accordance with, the ordinary rules of law which have been established for the administration of justice between private litigants.[5] These rules are subject to exceptions, as where they have been modified by statute in favor of the state,[6] or where they are held inapplicable

---

642 (1969).

[8]La.—Breaux v. G. H. Leidenheimer Co., 204 So. 2d 59 (La. Ct. App. 4th Cir. 1967).

[9]Pa.—Vance v. Kassab, 15 Pa. Commw. 328, 325 A.2d 924 (1974).

**[Section 556]**

[1]Minn.—Youngstown Mines Corp. v. Prout, 266 Minn. 450, 124 N.W.2d 328 (1963).

[2]Ill.—Berger v. Howlett, 25 Ill. 2d 128, 182 N.E.2d 673 (1962).

[3]U.S.—Johnson v. Texas Dept. of Corrections, 373 F. Supp. 1108 (S.D. Tex. 1974).

[4]Minn.—Lowry Hill Properties, Inc. v. Ashbach Const. Co., 291 Minn. 429, 194 N.W.2d 767 (1971).

[5]Ill.—People ex rel. Hoagland v. Streeper, 12 Ill. 2d 204, 145 N.E.2d 625 (1957).

**[Section 557]**

[1]Wis.—City of Milwaukee v. Milwaukee County, 27 Wis. 2d 53, 133 N.W.2d 393 (1965).

[2]U.S.—In re Grand Jury Investigation, 55 F.3d 350 (8th Cir. 1995).

[3]U.S.—People of State of N.Y. by Vacco v. Operation Rescue Nat., 80 F.3d 64, 34 Fed. R. Serv. 3d 1334 (2d Cir. 1996).

[4]N.Y.—Estate of Agins, 89 Misc. 2d 626, 392 N.Y.S.2d 373 (Sur. Ct. 1977).

[5]Ill.—Department of Public Works and Bldgs. for and in Behalf of People v. Decatur Seaway Motor Exp. Co., 5 Ill. App. 3d 28, 282 N.E.2d 517, 53 A.L.R.3d 1030 (1st Dist. 1972).

[6]Ala.—State ex rel. Atty. Gen. v. Tarleton, 279 Ala. 555, 188 So. 2d 516 (1966).

**VIRGINIA:**      **IN THE JUVENILE AND DOMESTIC RELATIONS DISTRICT COURT
FOR AUGUSTA COUNTY**

### CUSTODY/VISITATION ORDER

IN RE:        K█████ L████████        File No. J-29661-01 & 02

> Present:
> ☒ Father      ☐ Father's Attorney:
> ☐ Mother      ☐ Mother's Attorney:
> ☒ Other: Frank and Patricia Russo   ☒ Attorney: Susan Read
> ☒ Other: Karen Lentz-Garner   ☐ Attorney:

The above named child(ren) has/have been brought before this Court upon the filing of a written petition or motion concerning custody and/or visitation or transfer of custody is a dispositional alternative. Legal notice has been given to all proper and necessary parties. All provisions of the Juvenile and Domestic Relations District Court Law have been duly complied with in assuming jurisdiction over said child(ren), and all determinations have been made in accordance with the standards set forth in Virginia Code § 16.1-278.4, §16.1-278.5, §16.1-278.6 or § 16.1-278.8 or § 16.1-278.15 and §§ 20-124.1 through 20-124.6.

**HAVING CONSIDERED ALL RELEVANT AND MATERIAL EVIDENCE PRESENTED AND THE BEST INTEREST OF THE CHILD(REN), THE COURT FINDS THE CHILD(REN) IS/ARE WITHIN THE JURISDICTION OF THIS COURT AND FURTHER FINDS AND ORDRS THAT:**

1.   ☐ The parties are in agreement on the arrangement for the child's/ children's custody and visitation:
> > ☐ as set forth in the attached document, which is incorporated.
> > ☐ as set forth below.
> ☐ Transfer of custody is temporary and shall not prejudice either biological parent's custodial rights at any subsequent hearing on the merits addressing custody or visitation.
> ☒ This is a final order. ☐ This is a temporary order.

> The Family Court in Jefferson County, Alabama awarded custody of the child to Frank and Patricia Russo in October of 2008. The case was appealed by the father and while the grounds of the appeal are unclear, the case is still pending in the appellate court in Alabama and this court lacks jurisdiction to proceed with these petitions.

> Petition(s) is/are dismissed.

4/7/2009        I CERTIFY THAT THE DOCUMENT TO WHICH THIS
AUTHENTICATION IS AFFIXED IS A TRUE COPY
OF A RECORD IN THE AUGUSTA COUNTY JUVENILE
& DOMESTIC RELATIONS DISTRICT COURT, THAT
I HAVE CUSTODY OF THE RECORD, AND THAT I AM
THE CUSTODIAN OF THE RECORD.

_____  Judge

_5-22-09_  _Cathy R Morton_
Date      Clerk      Deputy Clerk

# 2007

# Alabama Department of Human Resources



*Historic R.C. Lawsuit Ends...*

## AFTER DRAMATIC TRANSFORMATION OF STATE'S CHILD WELFARE SYSTEM.

*"Alabama is today recognized as having the model child welfare system in the nation. What had been a dysfunctional system years ago is now considered the premier system in America."*

**Alabama Governor Bob Riley**

# From The Commissioner..... PAGE B. WALLEY, PH.D.



**BOB RILEY**
*Governor*

**State of Alabama
Department of Human Resources**

S. Gordon Persons Building
50 Ripley Street
P.O. Box 304000
Montgomery, Alabama 36130-4000
(334) 242-1310
www.dhr.alabama.gov



Page B. Walley, Ph.D.
*Commissioner*

**Governor Bob Riley, Chairman**
State Board of Human Resources

**Dear Governor Riley:**

**For the Department of Human Resources, the most significant event of Fiscal Year 2007 was the end of the R.C. lawsuit, almost two decades after it began. It was also one of the most noteworthy developments in the history of the state. Even though the federal court's oversight has ended, the department is maintaining the high standards for child welfare services that were required under the consent decree. Because of the improvements that have been made, Alabama's children are now safer than ever.**

We are also very proud of another record-setting performance in the state's child support program. Approximately $295 million was collected on behalf of dependent children who need and deserve the financial support of their parents. The department received federal approval of a demonstration project to increase elderly residents' participation in the state's food stamp program which is currently helping meet the nutritional needs of more than a half million recipients. Almost 6,000 children from low-income families were added to the state's subsidized child care rolls, and several outstanding individuals, organizations and public officials received special awards for their support of programs that encourage fathers to become involved in their children's lives in a nurturing, constructive way.

The Department of Human Resources' employees are hard-working, dedicated public servants who take pride in knowing that their efforts are making a positive impact on the state's families. Even while dealing with some very tough, and sometimes dangerous situations, they keep pressing forward, buoyed by the fact that with the help of the agency's many community partners, they are enhancing the quality of life for Alabama's citizens. The department's 2007 Annual Report is a record of those achievements.

Sincerely,

*Page B. Walley, Ph.D.*

Page B. Walley, Ph. D.
Commissioner

# Federal Court Ends Child Welfare Oversight

# R.C. Case Ends

On January 16, 2007, more than 18 years after the lawsuit was filed, Montgomery federal Judge Ira DeMent signed an order ending the R.C. case, citing the improvements that have made Alabama's child welfare system a national model for excellence.

"...the court finds that DHR successfully has reformed its child welfare system by developing a system of care which substantially complies with the requirements of the Consent Decree and the Implementation Plan and that judicial oversight is no longer necessary to avoid return to the depraved conditions that led to the commencement of this lawsuit in 1988 and to the court's intervention."

In a press release, Governor Bob Riley and state Department of Human Resources Commissioner Page Walley welcomed the news. "Alabama is today recognized as having the model child welfare system in the nation. What had been a dysfunctional system years ago is now considered the premier system in America. A lot of work has gone into making this transformation possible and we pledge to continue working hard to improve it even more for the well-being of the children and families of this state," Governor Riley said.

Commissioner Walley said, "It's difficult to overstate the significance of the end of the R.C. case. I want to thank Judge DeMent for his willingness to step in and assist the state as we took our child welfare program from the bottom to the top, and, of course, I want to recognize and thank the hard-working staff of DHR at both the state level and local level. They are the ones who dramatically improved the system and made this day possible."

A retrospective view illustrates the enormity and the completeness of the transformation that has taken place. When the R.C. lawsuit was filed, Alabama's foster care system was regarded as one of the worst in the nation. Dedicated county DHR staff struggled mightily to help hurting children while attempting to handle large numbers of cases with limited resources. In some instances, foster care was provided based upon what was available, not necessarily what a child's specific needs might be. Tired and frustrated from coping with poor working conditions, many veteran workers succumbed to job burnout. The loss of these experienced professionals exacerbated what was already a difficult situation.

The dramatic transformation that is now hailed as a national model began when a lawsuit was filed on behalf of R.C., an eight-year-old who was removed from his home and placed in foster care, where he endured multiple short-term placements, including confinement to psychiatric hospitals. He was heavily medicated, denied visitation with his father, and placed in a long-term residential treatment facility many miles from home.

It was alleged that R.C.'s plight was typical of the maltreatment to which other foster children were subjected. In 1991, a settlement of the case was reached, and the implementation of foster care improvements began. Each of the state's 67 counties made presentations asserting that they were meeting the very high standards required under the terms of the R.C. Consent Decree. During the presentations, local law enforcement officers, judges, school officials, and other members of the community attested to the fact that sweeping improvements had been made.

*Alabama is today recognized as having the model child welfare system in the nation.*